IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARY DONALD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-038-J |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO REVERSE THE COMMISSIONER'S DECISION**
**AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff MARY DONALD, brings this cause of action pursuant to 42 U.S.C. § 405(g),

seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social

Security (Commissioner), denying plaintiff's applications for disability benefits, supplemental

security income, and widow's benefits.  For the reasons hereinafter expressed, the undersigned

United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not

disabled and not entitled to benefits be REVERSED and the case REMANDED for further

administrative proceedings consistent with this Report and Recommendation.

I.
PROCEEDINGS

On September 25, 2000, plaintiff filed applications for Disability Insurance Benefits,

Supplementary Security Income, and Widow's or Widower's Insurance Benefits, alleging she

became unable to work because of a disabling condition on April 4, 1998.[1]  (Tr. 53-55, 479-80, 492-94).  As illnesses, injuries or conditions limiting her ability to work, plaintiff alleged "emphysema, neuropathy (legs), hip, mental, diabetes, weakness and poor coordination of both hands."  (Tr. 61).  Plaintiff alleged her conditions first bothered her in 1991 and limited her ability to work in that her legs swell, she has trouble walking without falling, she cannot concentrate or remember things, and she is in "constant pain."  Plaintiff acknowledged she was able to continue working from 1991 to 1998 because she "put up with the pain," but explained she stopped working in April 1998 because she "couldn't take the stress," which was affecting her blood sugar levels.  Plaintiff noted she completed the 12th grade in 1964, and identified her past work as a customer service representative (1991-1998), an office manager (1990-1991), a manager/bookkeeper (1985-1989), a medical records clerk (1985), and a salesman (no dates stated).  (Tr. 62, 67, 70-77).  At the time she filed her application, plaintiff was 54-years-old.  (Tr. 53).

On December 21, 2000, the SSA, identifying plaintiff's primary diagnosis as "diabetes mellitus" and secondary diagnosis as "affective/mood disorders," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep her from working.[2]  (Tr. 27, 29-35; 481-87; 495-500).  Plaintiff requested the SSA reconsider its initial determination, explaining she

---

[1]A non-attorney representative was appointed to represent plaintiff that same date.  (Tr. 25).

[2]In denying disability benefits, the SSA explained, "You said you were disabled because of emphysema, diabetes and diabetic neuropathy and poor hand coordination.  There is no evidence of a serious breathing problem.  You do have diabetes, but it has caused no serious damage to any part of your body.  This has caused no serious complications.  Although this condition requires medical treatment, it is not disabling.  You also said you were disabled because of mental problems.  This has not seriously affected your ability to understand, remember or be around other people.  Most of the time you are able to think clearly and carry out normal activities.  Medical reports show that these conditions are being treated.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  The evidence does not show any other health problems that cause significant limitations.  Although you said you have these conditions, the evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as an office manager, this condition does not prevent you from performing that work."  (Tr. 35).

did not agree with the determination because "[r]ecent coronary bypass 1-17-01; placed on 24 hr. oxygen; surgery and additional medications have complicated the diabetes and depression.  I am disabled and not capable of working."  (Tr. 36).  On May 29, 2001, the SSA, again identifying plaintiff's primary diagnosis as "diabetes mellitus" but identifying plaintiff's secondary diagnosis as "major depression," denied plaintiff benefits upon reconsideration.[3]  (Tr. 28, 38-41).

On July 12, 2001, plaintiff, represented by an appointed attorney, requested a hearing before an Administrative Law Judge ("ALJ"), explaining she disagreed with the determination on reconsideration because she was disabled "due to CABGS,[4] emphysema, neuropathy, diabetes, and emotional problems for which [she had] been treated."  (Tr. 63).  On May 13, 2002, the ALJ conducted an administrative hearing in this case.  (Tr. 506-35).  On August 14, 2002, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision.  (Tr. 9-17).

In his decision, the ALJ noted plaintiff, at the time of the hearing, was 56-years-old, had a high school education, and past work experience as a customer service clerk, office manager and bookkeeper.  (Tr. 13).  After referencing various medical records from 2000 through February 2002, the ALJ found the medical evidence indicated plaintiff has impairments of (1) neuropathy secondary to hypoxemia and diabetes, (2) bilateral carpal tunnel syndrome status post release on the right, (3) mild degenerative arthritis in the left wrist, (4) coronary artery disease with left ventricular

---

[3]In denying disability benefits, the SSA explained, "You said you were disabled because of coronary bypass surgery, emphysema, neuropathy, diabetes, poor coordination, and mental problems.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  Although you said you have an inability to work due to your symptoms, the evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as an auto parts clerk, this condition does not prevent you from performing the work."  (Tr. 41).

[4]Coronary artery bypass graft surgery.

3

dysfunction status post four vessel coronary bypass surgery and subsequent rewiring of the sternum,

(5) arthritic changes in the left sacral area, (6) diabetes with variable control, and (7) depression.

(Tr. 14, 17).  The ALJ found these impairments were severe within the meaning of the Regulations,

but that such impairments, even in combination, were not severe enough to meet or medically equal

one of the impairments listed in Appendix 1.  After discounting plaintiff's complaints of disabling

pain and limitations,[5] the ALJ determined plaintiff retained the following residual functional

capacity (RFC):

> [The ability] to lift 10 pounds occasionally.  She cannot climb ladders or scaffolds.
> She can occasionally climb stairs, balance, stoop, kneel, crouch and crawl.  She can
> work with only moderate amounts of stress and cannot perform fast paced work.  She
> can understand and follow detailed, but not complex instructions.  She is able to
> adapt to routine work changes.  She should be able to occasionally make positional
> changes.

(Tr. 15).  As support for this RFC determination, the ALJ cited plaintiff's Disability Report - Adult,

Work History Report, Recent Medical Treatment report, Physical Residual Functional Capacity

report, and Psychiatric Review Technique report.  (Exs. 1E, 2E, 7E, 8F and 15F).  In his "Findings,"

the ALJ modified his previous determination by finding plaintiff had the RFC "to lift 10 pounds

frequently and 20 pounds occasionally.  She cannot climb ladders or scaffolds.  She can

occasionally climb stairs, balance, stoop, kneel, crouch and crawl.  She can work with only

moderate amounts of stress and cannot perform fast paced work."  (Tr. 16).  The ALJ noted

plaintiff's past relevant work (PRW) as a customer service representative, and summarized the

"impartial vocational expert" (VE) testimony that, based upon plaintiff's RFC, plaintiff "*could

return to her past relevant work as [a] customer service representative *as generally performed* in the

---

[5]In his "Findings," the ALJ found plaintiff's "allegations regarding her limitations [were] not totally credible for the reasons set forth in the body of the decision."

national economy." (emphasis added). The ALJ also recited that the VE concluded that "a person with the same vocational profile as [plaintiff] and the limitations outlined above retained the capacity to perform the mental and physical requirements of this work as it is generally performed in the national economy." Consequently, the ALJ thus concluded plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on December 6, 2002, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 5-6). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
ISSUES

The ALJ made the determination that plaintiff was not disabled at Step Four of the five-step sequential analysis. Therefore, this Court is limited to reviewing whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform her past relevant work, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issues:

1.      The Commissioner's decision that plaintiff is able to perform her past
        relevant work (PRW) is not supported by substantial evidence; and

2.      The Commissioner's decision is not supported by substantial evidence
        because the ALJ, in his decision, erroneously gave more weight to the
        opinion of a non-examining physician over the opinions of plaintiff's treating
        physicians.

III.
Ability to Perform Past Relevant Work

Plaintiff contends the Commissioner's finding, at Step Four, that she is able to perform her

PRW as a customer service representative is not supported by substantial evidence.  Relying on

Social Security Ruling [SSR] 82-62 and case law from other circuits, plaintiff contends the

Commissioner's finding lacks evidentiary support because:

> 1.    the ALJ failed to make explicit and necessary findings as to the physical and
>       mental demands of plaintiff's PRW;
>
> 2.    the ALJ misstated the VE's testimony concerning her ability to return to her
>       PRW and improperly based his decision on such misstatement;
>
> 3.    the ALJ failed to consider the combined effects of her impairments,
>       specifically her mental impairments, and evaluate how such impairments
>       would affect her ability to  perform *all* of the physical and mental demands of
>       her PRW to determine whether she is capable of performing the relevant
>       tasks of her past job; and
>
> 4.    the RFC determined by the ALJ did not include any mental limitations.

At the hearing before the ALJ, the VE confirmed that plaintiff's file was made available to

him for the purpose of familiarizing himself with all of the proposed exhibits.  (Tr. 523).  The VE

also confirmed that he had been present during plaintiff's testimony.  (Tr. 524).  The ALJ then

posed a hypothetical to the VE whereby the VE was instructed to assume a claimant who alleged an

onset of disability at age 51, who was currently 56 years of age, who had a high school degree and

one semester of college, past relevant work history as noted in plaintiff's Disability Report (Ex.

1E), Work History Report (Ex. 2E), Recent Medical Treatment report (Ex. 7E), and as testified to

by plaintiff at the hearing, who could lift and carry a maximum of 20 pounds occasionally and 10

pounds frequently, who could occasionally climb, balance, stoop, kneel, crouch and crawl, who

should never be required to climb ladders, ropes, or scaffolds or balance, and who was restricted to

work that is not fast paced and with no more than a moderate level of stress.  (Tr. 525-26).  In

response, the VE advised such a claimant "might" be able to return to previous work as a customer

service representative.  (Tr. 526).

The ALJ then added, to the hypothetical, the restriction that the claimant could not understand and follow extremely complex instructions, but could understand and follow detailed instructions, could interact with co-workers and supervisors, and could adapt to changes.  When questioned as to whether "that" [his previous answer that such a claimant "might" be able to return to previous work as a customer service representative] would still be applicable, the VE replied, "Yes."  When the ALJ included in the hypothetical the condition that this claimant would occasionally have to use a cane, the VE confirmed that such a requirement would be "tolerable" in customer service work.  When the ALJ included in the hypothetical the condition that this claimant would have to make positional changes alternating between sitting and standing, and would have to elevate her feet one or two hours a day, the VE confirmed that customer service work could allow for such conditions, depending upon how the worker structured it.  (Tr. 526-27).  The ALJ also confirmed with the VE that work as a customer service representative should not require frequent or overhead lifting, but would not allow for frequent unscheduled rest breaks where the employee had to leave the work site.  (Tr. 527).  When the VE inquired as to the amount of work that could be missed, without a doctor's excuse, before an employee would be found unemployable, the VE opined that an employee could miss, on the average two times a month for no more than three to five months.  (Tr 528).  The VE indicated work as a customer service representative was classified as sedentary, skilled work, with an SVP of 6.  (Tr. 529).  The VE also acknowledged that if the claimant of the ALJ's hypothetical had moderate problems with memory and concentration, this condition would have an impact on the claimant's ability to do the job.  (Tr. 532).  The VE explained that it was conceivable that the claimant could perform the job, but that it would be

difficult and "wearing" for the claimant, and that it could reduce the number of customer service representative jobs available to the claimant.  The VE also indicated a claimant with PRW as a customer service representative would have acquired skills transferable to work as a telephone solicitor, a sedentary, semi-skilled job with an SVP of 3.  (Tr. 534).  In his decision, as his summarization of the VE's testimony, the ALJ made the following statement:  "The impartial vocational expert testified that based upon [plaintiff's] residual functional capacity, [plaintiff] *could* return to her past relevant work as [a] customer service representative as generally performed in the national economy."  (Tr. 16) (emphasis added).

Social Security Ruling [SSR] 82-62 states the policy, and explains the procedures, for determining a disability claimant's capacity to do past relevant work.  The ruling acknowledges that the "regulations require careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work."  The ruling instructs that "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work," either as this work was particularly performed by the claimant or as such work is generally performed in the community (*citing* SSR 82-61).  The ruling instructs that the claimant is the primary source to determine the skill level, exertional demands and nonexertional demands of such work.  SSR 82-62 specifies that the "[d]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in

some cases, supplementary or corroborative information from other sources . . . on the requirements

of the work as generally performed in the economy."  While it is the claimant's burden to establish

that she cannot perform her PRW, *see Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir.1991), any

decision that the claimant retains the functional capacity to perform PRW "must be developed and

explained fully in the disability decision" and there must be "enough information on past work to

permit a decision as to the individual's ability to return to such past work (or to do other work)."

When a claim involves a mental/emotional impairment, "care must be taken to obtain a precise

description of the particular job duties which are likely to produce tension and anxiety, *e.g.*, speed,

precision, complexity of tasks, independent judgments, working with other people, etc., in order to

determine if the claimant's mental impairment is compatible with the performance of such work."

The ruling dictates that if a determination is made that a claimant can meet the physical and mental

demands of PRW, the rationale shall clearly show how specific evidence leads to a conclusion and

must describe the weight attributed to the pertinent medical and nonmedical factors in the case,

reconciling any significant inconsistencies.  SSR 82-62 further requires that where the ALJ has

determined the claimant retains the capacity to perform a past relevant job, her <u>decision</u> *must*

contain the following <u>specific findings of fact</u>:

1.    A finding of fact as to the individual's RFC.

2.    A finding of fact as to the physical and mental demands of the past
      job/occupation.

3.    A finding of fact that the individual's RFC would permit a return to his or her
      past job or occupation.

Titles II and XVI: A Disability Claimant's Capacity To Do Past Relevant Work, In General, SSR

82-62 (1980).

Here, in his decision, the ALJ found plaintiff retained the RFC to:

> lift 10 pounds frequently and 20 pounds occasionally. She cannot climb ladders or scaffolds. She can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. She can work with only moderate amounts of stress and cannot perform fast paced work. (Tr. 16, finding 8) (the similar finding made in the body of the decision at Tr. 15) .

Again, in making this RFC determination in the body of his decision, the ALJ referenced various

reports which detailed previous vocational requirements of plaintiff's PRW. Based upon this RFC,

and after reciting definitions of PRW, the ALJ found the evidence in the case established that

plaintiff could return to her PRW as a customer service representative. As support for this

determination, the ALJ stated:

> The impartial vocational expert testified that based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as customer service representative as generally performed in the national economy.[6]

> The vocational expert concluded that a person with the same vocational profile as the claimant and the limitations outlined above retained the capacity to perform the mental and physical requirements of this work as it is generally performed in the national economy. (Tr. 16).

In the "Findings" in his decision, the ALJ found:

> The claimant's past relevant work as customer service representative did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965). (Tr. 17).

In his decision, the ALJ concluded:

> The claimant's medically determinable neuropathy secondary to hypoxemia and diabetes, bilateral carpal tunnel syndrome status post release on the right in March 2000, mild degenerative arthritis in the left wrist, coronary artery disease with left ventricular dysfunction status post four vessel coronary bypass, rewiring of the

---

[6]As noted by the plaintiff, the ALJ misstated the VE's testimony concerning her ability to return to her PRW. Although the ALJ stated the VE testified plaintiff "*could* return to her past relevant work . . . ," (emphasis added), the VE actually testified that, based upon the hypothetical situation presented by the ALJ, plaintiff "*might* be able to return to customer service representative." (emphasis added). (Tr. 526).

sternum for chest pain after heart surgery, arthritic changes in the left sacral area, diabetes with variable control and depression do not prevent the claimant from performing past relevant work.

The crux of plaintiff's first argument is that the ALJ's conclusion that plaintiff is able to perform her PRW as a customer service representative is unsubstantiated because, as demonstrated by the absence in the findings set forth above, the ALJ's <u>decision</u> failed to include specific findings of fact as to the physical and mental demands of plaintiff's past job/occupation as required by SSR 82-62. The only response from the Commissioner, however, appears to be that the ALJ did, in fact, consider the demands of her past work as evidenced by his statement: "The evidence in this case establishes that the claimant has past relevant work as [a] customer service representative." (Tr. 15). The Commissioner then appears to argue VE testimony, and the ALJ's reliance thereon, concerning whether an individual with plaintiff's RFC could perform the work of a customer service representative was sufficient to constitute the findings required as to the physical and mental demands of plaintiff's past work.

<u>In his written decision</u>, the ALJ did not make any <u>specific findings of fact</u> as to the physical and mental demands of plaintiff's past job/occupation as a customer service representative, either as actually performed or as ordinarily required by employers through the national economy, as required by SSR 82-62 (*see also* SSR 82-61). In his decision, the ALJ did not fully develop and explain his determination that plaintiff retains the functional capacity to perform her PRW. In fact, the ALJ did not reference any evidence, in his various discussions of plaintiff's ability to perform PRW in his decision, to demonstrate he inquired as to the physical or mental demands of plaintiff's particular PRW or carefully considered the demands of plaintiff's past work experience. Nor does the ALJ's decision clearly show how specific evidence led to his conclusion that plaintiff can

perform her PRW as required by the ruling.  On one hand, these omissions would appear to require that the case be remanded to the ALJ to establish the physical and mental demands of plaintiff's prior occupations and then to determine whether plaintiff can perform these jobs notwithstanding her impairments.   On the other hand, however, it does not appear that the ALJ's failure to discuss the specific physical demands of plaintiff's past work prejudiced plaintiff because the ALJ implicitly found plaintiff could return to her PRW as "generally performed in the national economy."

In making this finding, the ALJ relied on the VE testimony.  The ALJ noted plaintiff's PRW as a customer service representative did not require the performance of work-related activities precluded by her RFC.  In making this RFC determination, the ALJ had pointed to several reports completed by plaintiff, the primary source of information concerning the requirements of past work, that contained detailed information as to the physical requirements of plaintiff's past work "as actually performed."  The transcript record also reflects some testimony from plaintiff as to the skill level, exertional demands and nonexertional demands of her previous work as a customer service representative, as well as testimony from the VE as to the typical work demands of such work. Based on these reports and testimony, there appears to have been enough information in the record as to the physical demands of plaintiff's past work as generally performed to permit a decision as to the individual's ability to return to such past work.

In considering this issue, it is noted that while SSR 82-62 states the policy, and explains the procedures, for determining a disability claimant's capacity to do past relevant work, and even includes references to PRW as generally performed, the regulation, in its application, does not appear suited to a determination of capacity to do PRW "as generally performed."  The language of

SSR 82-62 is clearly more applicable to determinations of whether a claimant can perform her PRW "as actually performed" rather than "as generally performed."[7] Therefore, there is some question, at least in the mind of the undersigned, whether SSR 82-62 is truly applicable to situations where an ALJ, based upon testimony from a VE, finds a claimant can return to past relevant work as such was "generally performed." If a finding of nondisability can stand based upon a return to PRW as generally performed, it seems of little value to develop the specific duties of a claimant's PRW as actually performed.

Plaintiff next complains of the statement in the ALJ's decision that: "The impartial vocational expert testified that based upon [plaintiff's] residual functional capacity, [plaintiff] *could* return to her past relevant work as [a] customer service representative as generally performed in the national economy." (Tr. 16) (emphasis added). Plaintiff argues this statement by the ALJ was a misstatement of the VE's testimony concerning her ability to return to her PRW, and that the ALJ improperly relied <u>solely</u> on this misstatement as the basis for his decision that plaintiff could perform her PRW. In her response, the Commissioner contends a review of the ALJ's questioning of the VE refutes plaintiff's claim that the VE's statement that a person contemplated in the VE's hypothetical "might" be able to return to customer work was not conclusive evidence that plaintiff was able to perform her PRW.

While an ALJ may accept a VE's testimony and meet his burden by pointing to VE testimony, here, all of the testimony of the VE subsequent to the answer here at issue appears to have been based on the initial response that such a claimant "might" be able to perform PRW as a customer service representative – an inconclusive response. Review of the VE testimony, as a

---

[7]For example, inquiry of a claimant as to the particular demands of her past relevant work is irrelevant if such PRW "as generally performed" does not include such demands.

whole, simply does not establish that the plaintiff could definitely perform customer service work, and the ALJ should not have relied on this statement by the VE as conclusive evidence that plaintiff could perform her PRW.  Instead, follow up questioning should have been done and a definitive answer should have been elicited.  On remand, the ALJ should elicit further testimony from the VE as to whether a claimant such as plaintiff can or cannot actually perform PRW as a customer service representative.

Plaintiff further argues the ALJ's decision was deficient and unsubstantiated because the ALJ failed to evaluate how the *combined effect* of plaintiff's impairments (her physical impairments combined with her mental impairment, which was determined to be severe by the ALJ) affected her ability to perform *all* of the physical <u>and</u> mental demands of her PRW.  Plaintiff appears to be complaining of the ALJ's failure to more fully reference or address, in his decision, plaintiff's medical records concerning her mental impairment, and the effect such mental impairment would have on plaintiff's ability to perform her PRW.

The record before the ALJ reflects that on June 27, 2000, plaintiff presented to the Texas Panhandle Mental Health Authority with a prior history of major depressive disorder (MDD) and complaints of memory problems, decreased concentration and mood, anxiety, lack of motivation and self worth, and increased stress.  (Tr. 391). Upon examination, plaintiff's strengths were noted as motivation and good communication skills, and her thought process were found to be logical and goal directed but slow.  Plaintiff was found to be cooperative but negativistic, with a flat affect and a dysphoric mood.  (Tr. 392).  Plaintiff's physician diagnosed plaintiff with MDD, recurrent, severe

with psychosis, noted histrionic features,[8] and assessed plaintiff's GAF at 30.[9]  (Tr. 393)

On August 17, 2000, plaintiff was assessed a GAF score of 40-50 upon mental examination. (Tr. 385).[10]  At the exam, plaintiff exhibited typical symptoms of depression, but did not exhibit psychosis, had intact memory, fair intelligence, and unimpaired insight, judgment, ability to attend and concentrate.  (Tr. 386).  On October 5, 2000, plaintiff's treatment plan indicated a current GAF score of 41.  (Tr. 377).

At a mental status examination conducted on December 12, 2000, plaintiff was assessed a GAF score of 41.[11]  (Tr. 373).  At the exam, plaintiff reported memory problems and occasionally hearing a voice and seeing hallucinations.  (Tr. 372).  Plaintiff exhibited a depressed mood with a flat affect and was experiencing memory and concentration difficulties, but showed no signs of neurological problems, had coherent speech, organized thoughts, was not delusional, intact recent memory, good remote memory, adequate abstract thinking and fair judgment.  (Tr. 373).  The doctor's prognosis for plaintiff was "guarded," noting plaintiff's physical problems and dependence on her children contributed to her depression and low self-esteem.  (Tr. 374).  The doctor noted plaintiff was able to cook for herself and maintain her house, previously worked well with others,

[8]Histrionic features may include excessive emotional expression and may appear to be attention-seeking.

[9]GAF refers to the Global Assessment Functioning Scale which ranges from 1, persistent danger of severely hurting self or others, or unable to care for herself, to 100, superior functioning.  The scale is an assessment tool used in the mental health profession.  A GAF score of 30 is defined as behavior that is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (*e.g.*, sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or an inability to function in almost all areas (*e.g.*, stays in bed all day; no job, home, friends).  DSM-IV at 47.

[10]The GAF range of 31 to 40 is described as "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

[11]The GAF range of 41 to 50 is described as "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

that problems with her diabetes had resulted in plaintiff not handling work stress well, but that plaintiff would be able to manage benefit payments in her own interest.

On December 21, 2000, in a pharmacologic management record, plaintiff's GAF was noted as 50.  (Tr. 369).

Despite the above entries in the record, as well as other mental health care records (Tr. 367-393), the only references the ALJ made in his decision concerning plaintiff's mental condition were:

1.   "By July 2000 . . . [plaintiff] required no medication for her anxiety (ex. 7F/25)."

2.   "[Plaintiff] was diagnosed with depression in 2000, but this improved with medication (Exs. 11F and 7F/5)."

3.   "[Plaintiff] was no longer depressed by February 2002 (Ex. 16F/10)."

4.   Plaintiff's depression is "severe" under the regulations.

5.   "[Plaintiff's] depression is controlled with medications and does not result in the type of marked limitations contemplated by §§ 12.04 or 12.06."

6.   "[Plaintiff] is characterized as histrionic (Ex. 11F)."

7.   "[Plaintiff] can work with only moderate amounts of stress and cannot perform fast paced work.  She can understand and follow detailed, but not complex instructions.  She is able to adapt to routine  work changes."

8.   "[Plaintiff] can work with only moderate amounts of stress and cannot perform fast paced work."[12]

The ALJ completely failed to reference the significantly low GAF scores assessed by plaintiff's mental health care providers, nor did he attempt to explain why he gave such GAF evaluations no

---

[12]Although plaintiff has argued the ALJ's "RFC makes no findings as to mental health problems,"the ALJ did acknowledge plaintiff has mental limitations as indicated by this RFC wherein he limited the amount of stress and speed of work plaintiff can tolerate.

weight or little weight.  While an ALJ is not required to cite to each and every medical or

administrative record in his or her decision, the ALJ is required to fairly consider <u>all</u> the evidence.

Here, the evaluations relating to plaintiff's mental functioning capacity were not addressed at the

administrative level.  Plaintiff was assessed GAF scores of 30 to 50 on each evaluation.

Consequently, it is impossible to determine whether the ALJ considered and rejected, or simply

overlooked, the GAF scores.  While the GAF is not an absolute determiner of disability, it is a

factor and it was error for the ALJ to fail to acknowledge, reference, or address these evaluations,

and determine whether such evaluations affected plaintiff's RFC or her ability to perform PRW.

Consequently, the ALJ's decision should be remanded for consideration of these mental health

findings.

Upon remand, the ALJ should address the medical records reflecting plaintiff's GAF scores

of 30-50, and evaluate such records, specifically addressing any perceived inconsistencies with

other mental health findings.  The ALJ should also discuss the significance of such scores as to

plaintiff's mental impairment and the affect, if any, such scores would have on plaintiff's ability to

perform her PRW as well as the erosion, if any, such scores would have on her ability to perform

her PRW.


IV.
Opinions of Non-Examining Physicians v. Opinions of Treating Physicians

Plaintiff next argues the ALJ erred in failing to give any weight to the opinions of her

treating physicians, *viz.*, plaintiff's mental health care providers' GAF opinions.  Plaintiff argues the

SSA's doctors determined plaintiff's mental health problems were "not severe" (Tr. 150-67),

thereby directly contradicting plaintiff's treating physicians' opinions as reflected by the GAF

evaluations.  Plaintiff infers that as the ALJ determined plaintiff's mental condition was not severe enough so as to be disabling, the ALJ must have accorded no weight to the treating doctor's opinion, instead, giving more weight to the SSA's doctor's opinion.  When a treating doctor's opinion is not given any weight or a non-treating doctor's opinion is given more weight, an ALJ is required to specifically and independently address each of the factors under section 404.1527(d), *viz.*, (1) the length of treatment; (2) the frequency of examinations; (3) the nature and extent of the relationship; (4) the support provided by other evidence; (5) the consistency of the opinion with the record; and (6) the doctor's specialization.  Plaintiff appears to argue the ALJ's failure to specifically address each of the factors is reversible error.

Again, as discussed above, while the ALJ did find plaintiff to have the severe impairment of depression, he did not, in any manner, address any of plaintiff's treating mental health physicians' GAF evaluations.  Consequently, there is no evidence that the ALJ declined to give any weight to the GAF opinions or gave more weight to the opinion of a non-examining physician than plaintiff's treating doctors.  On remand, as noted above, the ALJ should address the GAF evaluations by plaintiff's treating physicians.  If the ALJ discounts the validity of such GAF scores, he should identify any significant inconsistencies and specify how such evidence led to his conclusion.  The ALJ has discretion in determining the amount of weight to be given to any medical physician's testimony or medical reports.  If the ALJ does not discount the validity of the GAF scores, but chooses, instead, to give more weight to the opinion of the State agency's medical consultant, he should address the factors set forth in 20 C.F.R. § 404.1527(d).  In doing so, it may very well be determined that there are adequate reasons to reject the GAF scores of plaintiff's treating physicians.  However, it may also be that an analysis by the ALJ will result in a determination that

there are not adequate reasons upon which to reject such evaluations.  Only upon remand can such

determinations be made.

## V.
## RECOMMENDATION

For all of the reasons set forth above, it is the RECOMMENDATION of the United States

Magistrate Judge to the United States District Judge that the administrative decision of the

defendant Commissioner finding plaintiff MARY DONALD not disabled be REVERSED, and that

this case be REMANDED for further consideration at Step Four of the sequential step process as

outlined above and, if necessary, for consideration at Step Five of the sequential step process.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to

plaintiff's attorney of record by the most efficient and expedient means available.

IT IS SO RECOMMENDED.

ENTERED this 17th day of February 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the
event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is
eleven (11) days from the date of filing as indicated by the file mark on the first page of this
recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are
allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be
filed **on or before the fourteenth (14th) day after this recommendation is filed**.  *See* 28 U.S.C. §

636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).